413 So.2d 1157 (1982)
Ex parte Carol Sloan PEDIGO.
(Re Carol Sloan PEDIGO v. George Preston PEDIGO).
81-235.
Supreme Court of Alabama.
May 7, 1982.
George A. Kronenberg, Huntsville, for petitioner.
Richard Kempaner, Huntsville, for respondent.
PER CURIAM.
WRIT QUASHED AS IMPROVIDENTLY GRANTED.
TORBERT, C. J., and FAULKNER, JONES, ALMON and BEATTY, JJ., concur.
SHORES, EMBRY and ADAMS, JJ., dissent.
MADDOX, J., not sitting.
EMBRY, Justice (dissenting):
The writ of certiorari to the Court of Civil Appeals 413 So.2d 1154 was granted in this case to review the decision of that court regarding its treatment of a United States Civil Service Retirement Annuity in a divorce proceeding as not being marital property. I would not quash the writ but would hold as stated below.
In this action the trial court entered a final decree of divorce and awarded petitioner Carol Sloan Pedigo alimony in the amount of $250 per month. The trial court did not award her any portion of a retirement annuity being paid to George Preston Pedigo. She vigorously contended at trial, and again on appeal, that she was entitled to a portion of this annuity. The appellate court affirmed the trial court, which failed to treat the annuity as marital property. I find the appellate court relied on authority not dispositive of this case and failed to acknowledge the weight of authorities cited by Mrs. Pedigo and would reverse and remand.
The annuity in question was earned by the husband as a civil service employee of the National Aeronautics and Space Administration. He had worked at NASA for thirty years, during the latter twenty of which he was married to petitioner. During the early years of the marriage she had worked at Redstone Arsenal in Huntsville. She quit work for a period of twelve years, in order to rear their three children, after which she took a job as a schoolteacher so she could be home at times when the children were there. She asserts that because she has thus contributed to the marriage without building her own financial security, she is entitled to either half of the retirement annuity earned during the marriage, or to one-third of its total value.
The trial court made no mention of the annuity in its judgment and the appellate court affirmed upon the basis that the resultant denial of her claim was not an abuse of the trial court's discretion, citing Armstrong v. Armstrong, 391 So.2d 124 (Ala. Civ.App. 1980), and Williams v. Williams, 389 So.2d 141 (Ala.Civ.App.1980). Further, it was held that the annuity should not be the subject of either a property settlement or alimony in gross, but may be considered a source of income from which to pay periodic alimony, on authority of Holcomb v. Smith, 404 So.2d 709 (Ala.Civ.App.1981), and Kabaci v. Kabaci, 373 So.2d 1144 (Ala. Civ.App.1979).
I think the appellate court erred when it relied on Holcomb and Kabaci. Those cases involved military retirement benefits that are governed by different criteria. The United States Supreme Court, in McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), held that states may not apply community property law to divide military retirement pay, stating:
"... [I]t is manifest that the application of community property principles to military *1158 retired pay threatens grave harm to `clear and substantial' federal interests. See United States v. Yazell, 382 U.S., at 352, 15 L.Ed.2d 404, 86 S.Ct. 500. Under the Constitution, Congress has the power `[t]o raise and support Armies,' `[t]o provide and maintain a Navy,' and `[t]o make Rules for the Government and Regulation of the land and naval forces.' U.S.Const, Art I, § 8, cls 12, 13, and 14. See generally Rostker v. Goldberg, 453 U.S. [57], [59], 69 L.Ed.2d 478, 101 S.Ct. 2646 (1981). Pursuant to this grant of authority, Congress has enacted a military retirement system designed to accomplish two major goals: to provide for the retired service member, and to meet the personnel management needs of the active military forces. The community property division of retired pay has the potential to frustrate each of these objectives."
But the court distinguished military retirement benefits from civil service and other federal retirement benefits, noting:
"... Indeed, Congress recently enacted legislation that requires that Civil Service retirement benefits be paid to an ex-spouse to the extent provided for in `the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation.' Pub.L. 95-366, § 1(a), 92 Stat. 600, 5 U.S.C. § 8345(j)(1) (1976 ed., Supp. III) [5 U.S. C.S. § 8345(j)(1)]. In an even more extreme recent step, Congress amended the Foreign Service retirement legislation to provide that, as a matter of federal law, an ex-spouse is entitled to a pro rata share of Foreign Service retirement benefits. Thus, the Civil Service amendments require the United States to recognize the community property division of Civil Service retirement benefits by a state court, while the Foreign Service amendments establish a limited federal community property concept. Significantly, however, while similar legislation affecting military retired pay was introduced in the 96th Congress, none of those bills was reported out of committee. Thus, in striking contrast to its amendment of the Foreign Service and Civil Service retirement systems, Congress has neither authorized nor required the community property division of military retired pay. On the contrary, that pay continues to be the personal entitlement of the retiree."
The federal statutory authority cited in McCarty, for such a division of a retirement annuity as Mrs. Pedigo seeks, requires that the decision of the appellate court be reversed and the cause remanded to the trial court for consideration by it of Mrs. Pedigo's claim. This is not to say that federal law requires that a division be made. See Witcig v. Witcig, 206 Neb. 307, 292 N.W.2d 788 (1980), but only that the annuity is subject to division as a marital asset and not just as a source of income from which periodic alimony payments are to be made.
Mrs. Pedigo argues that her marital contributions as a homemaker were equal to the husband's contributions as a breadwinner. This is true, she says, because she gave up the opportunity to build her own retirement benefits when she gave up her federal employment and went without compensable employment for twelve years, followed by teaching school at an attendant low pay in order that she could be at home with the children. For these reasons, she contends, she is entitled to a share in the retirement annuity earned by Mr. Pedigo during the period they remained married.
In support of her contentions, Mrs. Pedigo cites a host of decisions from a multitude of jurisdictions with property law schemes similar to ours, holding that retirement pay is a marital asset in which each spouse has a vested property interest. She cites In re Marriage of Camarata, 43 Colo.App. 317, 602 P.2d 907 (Colo.App. 1979), as the sole decision contra; I have, in addition, found only Witcig, supra, holding that civil service retirement annuities are not marital property.
I respectfully differ with the Colorado and Nebraska courts and would hold with the majority of jurisdictions that, in most circumstances, a retirement annuity earned through the gainful employment of one *1159 spouse during the marriage should be treated as marital property upon dissolution of the marriage.
I would remand for the trial court to reconsider the property settlement and alimony award in light of what I have written in this dissent.
The opinion of this court in Hager v. Hager, 293 Ala. 47, 299 So.2d 743 (1974), has an excellent discussion of the rationale and basis for these two distinct facets of marital dissolution awards and would provide sufficient guidance to the learned trial judge in his reconsideration of the questions of property settlement and award of periodic alimony.
SHORES and ADAMS, JJ., concur.