## BOYD v BOYD

Docket No. 55268. Submitted January 5, 1982, at Lansing.—Decided June 8, 1982.

Duane H. Boyd was granted a divorce from Kathleen Boyd, Hillsdale Circuit Court, Harvey W. Moes, J. Defendant appeals, alleging that the trial court erred in the distribution of marital property and in the awarding of child support and alimony. *Held:*

1. The plaintiff's interest in his vested, noncontributory pension was a marital asset which should have been considered as such by the trial court. Because the court failed to consider the pension, the matter is remanded for further proceedings concerning the valuation and manner of distribution of the parties' interests in the pension benefits.

2. The seniority which plaintiff earned in his job during the marriage is not a marital asset such that it would entitle the defendant to more than the 50% of the marital property which she was awarded. The trial court did not err by refusing to consider the plaintiff's seniority.

3. The trial court was not bound by the recommendation of the friend of the court with regard to child support. The award made by the court was not an abuse of discretion.

4. The trial court's award of alimony in gross, rather than permanent alimony, was not an abuse of discretion. However, because of the possibility that the defendant, because of her age, health conditions, and the like, may not be able to support

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 10] 24 Am Jur 2d, Divorce and Separation §§ 632, 723.
[2] Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.
[3] 24 Am Jur 2d, Divorce and Separation §§ 626, 933.
[4, 9] 24 Am Jur 2d, Divorce and Separation § 632.
[5] 4 Am Jur 2d, Amicus Curiae §§ 1, 3.
　24 Am Jur 2d, Divorce and Separation § 839.
[6] 24 Am Jur 2d, Divorce and Separation §§ 839, 840.
[7] 24 Am Jur 2d, Divorce and Separation § 630 *et seq.*
[8] 24 Am Jur 2d, Divorce and Separation § 668.

herself, the judgment awarding alimony is modified to reserve the possibility of future alimony.

Affirmed in part, reversed in part, and remanded for further proceedings.

M. F. CAVANAGH, P.J., wrote separately to express his opinion that job seniority, while it is not a marital asset, is a factor which should be considered in the distribution of marital assets and in the award of alimony in a case such as this where the wife had been absent from the job market for an extended period of time.

BEASLEY, J., concurred in the result only.

OPINION BY BRONSON, J.

1. DIVORCE — PENSION BENEFITS — MORTALITY TABLES.

Statutory mortality tables may be used to calculate life expectancy in determining the value of a pension plan for purposes of a marital property division in a divorce case (MCL 500.834; MSA 24.1834).

2. DIVORCE — MARITAL ASSETS — PENSION BENEFITS.

An employee's interest in a vested pension which is determined to be a marital asset should be distributed even if the pension is subject to the contingency or expectancy that the employee survive to a certain age or a specific number of years; the manner of distribution rests within the discretion of the trial court.

3. DIVORCE — MARITAL ASSETS — DIVISION OF PROPERTY — APPEAL.

The division of marital property and the awarding of alimony in a divorce case are within the discretion of the trial court; the trial court's division of property or award of alimony will not be reversed on appeal unless the Court of Appeals is convinced that had it been sitting in the lower court's position it would have reached a different disposition.

4. DIVORCE — MARITAL ASSETS — JOB SENIORITY.

An employee's seniority in his job is not a marital asset such as would entitle the employee's spouse to more than half of the marital property in a property division made pursuant to a divorce.

5. DIVORCE — CHILD SUPPORT — FRIEND OF THE COURT.

A trial court is not bound by the recommendation of the friend of the court in awarding child support pursuant to a divorce judgment.

6. Divorce — Child Support.

    The provision of child support beyond a child's 18th birthday is precluded absent an express agreement between the parties to provide such support.

7. Divorce — Alimony.

    Factors to be considered in determining whether alimony should be awarded in a judgment of divorce include: 1) the past relations and conduct of the parties; 2) the length of the marriage; 3) the ability of the parties to work; 4) the source of and amount of property awarded to the parties; 5) the age of the parties; 6) the ability of the parties to pay alimony; 7) the present situation of the parties; 8) the needs of the parties; 9) the health of the parties; 10) the prior standard of living of the parties and whether either is responsible for the support of others; and 11) general principles of equity.

8. Divorce — Alimony.

    An award of alimony in gross should be modified to reserve the possibility of payment of future alimony where the evidence shows that the unemployed spouse may not, because of her age, health problems, and the like, be able to fully support herself in the future.

Opinion by M. F. Cavanagh, P.J.

9. Divorce — Marital Assets — Job Seniority.

    *Job seniority, while it is not a marital asset itself, is a factor which should be considered in a distribution of marital assets or an award of alimony in a case involving a long-term marriage wherein the parties had agreed that the husband would work and the wife would maintain the household and raise the children, thus removing herself from the job market for an extended period of time.*

Concurrence in Result by Beasley, J.

10. Divorce — Marital Assets — Pension Benefits.

    *A trial court should not be limited in the methods available to it for equitable distribution of pension benefits which are considered to be marital assets in a divorce case.*

*Fry, Barker & Hayne,* for plaintiff.

*Thomas E. Anderson,* for defendant.

Before: M. F. CAVANAGH, P.J., and BRONSON and BEASLEY, JJ.

BRONSON, J. The parties were divorced by a judgment entered on December 3, 1980, in the Hillsdale County Circuit Court. Defendant appeals as of right, contesting the propriety of the property disposition, child support, and alimony award.

At the time of the divorce, plaintiff was 55 years old and employed by Clark Equipment Company (hereinafter Clark Equipment). The parties' tax returns for the years 1978 and 1979 reveal that in each year plaintiff earned a gross salary of approximately $28,000. Defendant was 51 years of age at the time of the divorce and unemployed. Defendant worked only sporadically during the marriage while plaintiff had been employed by Clark Equipment for some 24 years. The parties were married for over 30 years and had 2 minor children at the time of trial.

The trial court awarded plaintiff property with a value of $37,206. Defendant was awarded property with a value of $30,687. Plaintiff was ordered to pay defendant $3,259.50, which represented one-half the difference of the value of the property awarded plaintiff in excess of that awarded defendant. A subpay plan at Clark Equipment was valued at $4,000. Plaintiff was ordered to pay defendant an additional $2,000 as her share of the plan.

Child support was set at $45 per week, per child, until each child attained his majority. On December 4, 1980, one of the children, Charles, turned 18. On May 6, 1982, Steven, the parties' remaining minor child, reached 18 years of age.

The court awarded defendant $60 a week in alimony until May 6, 1982. On this date, plaintiff's alimony obligation expired. The court also ordered

plaintiff to pay defendant as additional alimony $1,000 per year for the years 1981 and 1982. Each payment was to be made in a lump sum before the start of the calendar year for which it was intended.

Defendant first contends that the circuit court erred in failing to consider as a marital asset plaintiff's noncontributory pension plan with Clark Equipment. In *Miller v Miller,* 83 Mich App 672; 269 NW2d 264 (1978), this Court held that a noncontributory pension plan is distributable as a marital asset to the extent that the plan has a reasonably ascertainable present value and the employee's interest is more than a mere expectancy. See, also, *Tigner v Tigner,* 90 Mich App 787; 282 NW2d 481 (1979).

In the case at bar, the court noted that although defendant had a current right to a pension, he was not yet eligible to receive anything from the company. At the earliest, plaintiff would be able to receive monies from the pension plan at age 59. In any case, upon his death, unless he was married and elected a "joint and survivor benefit", he would be eligible for no further payments.[1]

In *Gibbons v Gibbons,* 105 Mich App 400; 306 NW2d 528 (1981), we held that an employee's vested, but unmatured, pension rights were distributable as a marital asset. In considering the *Miller*

---

[1] The pamphlet describing this benefit option states:

*"Joint and Survivor Benefit—*If you are married when you retire and do not choose the Lifetime Benefit, you will receive a somewhat smaller monthly pension for as long as you live. At your death (if you are still married to the same spouse and have been for at least one year), 55% of your pension will be paid to your surviving spouse for the rest of his or her life. This way of payment provides protection for your spouse and is called the 'Joint and Survivor Benefit.' If your spouse dies before you do, the reduction in your pension which was made to provide for the Joint and Survivor Benefit can be eliminated. (In such an event you must let the Company know so that your benefits can be increased.)"

holding, the *Gibbons* Court concluded that the possibility that one might die prior to the completion of his expected lifespan is not the type of contingency which should defeat the distribution of pension benefits upon marital dissolution. This case differs from *Gibbons* only in that here, at the time of the divorce, the pension holder was not eligible to receive benefits if he chose to retire immediately. As in the instant case, *Gibbons* involved a pension plan which terminated on the death of the pension holder.

In *Gibbons,* we stated that the statutory mortality tables appearing in MCL 500.834; MSA 24.1834 could be used to calculate life expectancy for purposes of determining the value of a pension plan. The value calculated in this way could in turn be reduced to a present value for purposes of computing each party's interest in the pension benefits. *Id.,* 403. Essentially, the same procedure can be utilized to determine the value of the pension plan here. Since, however, plaintiff was 55 years old at the time of the divorce and was not eligible to receive any pension benefits until at least age 59, the following deviation from the *Gibbons* calculation would be necessary. First, the lower court would have to ascertain the likelihood of a 55-year-old man dying before he becomes 59. If, for instance, five 55-year-old males out of each 100 die by the age of 59, the value of the pension benefits would have to be reduced by 5%. Second, the life expectancy of plaintiff at retirement age would have to be calculated. By MCL 500.834; MSA 24.1834, a 59-year-old person has a life expectancy of 16.81 years.[2] Third, the life expectancy of plain-

---

[2] The statutory mortality tables may be used for purposes of calculating present value. However, they need not be used. Either party, for instance, might introduce other actuarial mortality tables deemed to be more accurate by the lower court. The statutory mortality tables

tiff would have to be multiplied by the yearly pension benefits the plan provides. Fourth, this figure must be reduced by the percentage of possibility that plaintiff would die before he is eligible for retirement. (In this example, we have used 5% for purposes of illustration only.) Fifth, this figure must be reduced to present value. This sum will constitute a reasonably ascertainable present value for the pension.

The major objection to the division of a vested, but unmatured, pension plan in the way that we have outlined is that the pension holding spouse may not ever receive anything from the pension plan yet, nonetheless, have to pay the nonpension holding spouse for an interest in the plan. This is, of course, a matter for legitimate concern. However, to the extent that a pension plan of the variety under consideration here is deemed a marital asset, the real problem is determining which party on the marriage's dissolution may have to be shorted in the distribution of assets. If, because of the relatively small possibility that the pension holding party might not actually benefit from the plan, we were to hold such pensions nondistributable, we would actually be perpetrating a greater inequity. Our refusal to distribute the pension benefits would result in the pension holding spouse obtaining more than a fair share of the marital assets in most cases since, in actuality, most persons do live approximately to the fulfillment of their expected lifespan. Indeed, even under the method of distribution outlined in this opinion, a

do not distinguish males and females. As such, they tend to overstate males' life expectancies and to understate females' life expectancies. Additionally, we do not foreclose the introduction of evidence tending to show that a particular individual is likely to have a longer or shorter life expectancy than is reflected by the statutory mortality tables or, indeed, any mortality table used to determine expected lifespan.

pension holding spouse who lives significantly longer than his or her expected lifespan will obtain a disproportionately higher share of the marital assets. Under the holding of this opinion some inequities will probably result. However, the contrary holding will inevitably result in even greater inequities in a greater number of cases.

We proceed from the premise that it is unrealistic to think of an employee's pension plan as a gratuity or mere largesse from the employer. Such pension plans must be deemed bargained-for consideration in lieu of more salary now. If, instead of a pension plan, the employer offered higher wages, these monies would have been available to the parties during the marriage and, to the extent that this compensation in lieu of a pension had been invested, may well have resulted in a bigger pot of marital assets for distribution.[3] By finding that a particular pension plan is a marital asset, a court is finding that both parties have a right as between themselves to benefit from the same.

Two of us were on the panel that decided *Miller, supra.* We now believe that the following statement from *Miller* is too broad:

"If the employee's interest is contingent or a mere expectancy it may not be distributed pursuant to a divorce judgment." *Id.,* 675.

It is our opinion that any vested pension which is deemed a marital asset should be distributed even if the plan is subject to the contingency or expectancy that the employee survive to a certain age or a specific number of years. Moreover, there may be potential pension benefits which, although not

---

[3] To the extent that this is untrue, the higher wages would have resulted in an improved standard of living—a standard of living enjoyed by the pension holder and non-pension holder alike.

vested at the time of divorce, should be considered marital assets. For instance, if an employee's company has a pension plan which results in a vested pension after 25 years of service, the employee has worked 24 years, and there is no or very little chance that the employee will be laid off before the plan vests, we believe that anticipated benefits from the plan should be distributable to the extent the lower court concludes the plan is a marital asset.[4]

We have discussed the distribution of potential pension benefits as if they must be reduced to present value and distributed immediately. In fact, this is only one possible means of distribution. In *Chisnell v Chisnell,* 82 Mich App 699; 267 NW2d 155 (1978), *lv den* 403 Mich 844 (1978), *cert den* 442 US 940; 99 S Ct 2881; 61 L Ed 2d 310 (1979), *reh den* 444 US 887; 100 S Ct 187; 62 L Ed 121 (1979), this Court affirmed a distribution of pension benefits as they were received by the pension holding spouse. This method of distribution would be particularly useful in cases such as this one, where the lifespan of the pension holding spouse determines the actual value of the pension benefits. This method of distribution would eliminate the inequity of a pension holding employee "buy-

---

[4] We start from the premise that a marriage is a partnership, wherein the parties to that relationship define the rights and responsibilities of each. In this case, there is ample evidence to believe that the parties agreed plaintiff would work for wages while defendant would do domestic work for the benefit of the family unit. Undoubtedly, until, or shortly before, plaintiff filed for divorce, defendant believed that she would share in any retirement benefits plaintiff received. To allow plaintiff to defeat the distribution of the pension rights as a marital asset, due to the relatively small possibility that he might never receive anything from the plan, is to give pre-emptive effect to the status of the pension holder as wage earner and to ignore both defendant's legitimate expectations and contributions within the home for the family unit. Such a holding would represent a subtle preference for wage earners (in most cases men) as opposed to homemakers (in most cases women) in divorce actions.

ing out" his spouse's pension interest and dying
without ever receiving anything. It would also
eliminate the possibility of the pension holding
employee's interests in the pension being far more
valuable than would be expected based upon life
expectancy, so that the non-pension holding spouse
would be shorted.

In this case, the court could defer distribution of
any pension benefits until plaintiff begins to re-
ceive them. Such payments would resemble ali-
mony, but would be considered the delayed distri-
bution of marital assets. Whether such a method
of distribution should be used in this case, or any
case, rests within the trial court's discretion. A
delayed distribution would be most appropriate
where the parties to the divorce are not extremely
bitter and hostile, so that the pension holding
spouse could be counted on to provide his ex-part-
ner with her share of the pension as ordered.[5] The
actual amount of time the pension holding spouse
must, or plans to, work before retiring might also
be a factor in determining the feasibility of de-
layed distribution.[6]

In light of the foregoing, we remand this matter
to the lower court for further proceedings. We do
consider the pension in this case to constitute a
marital asset. The entirety of the vested pension
interests came about during the parties' marriage.

---

[5] A lower court which ordered a delayed distribution of the pension
interests could always modify the judgment to provide for immediate
distribution if the pension holding spouse later proved to be recalci-
trant in making the payments as ordered.

[6] It would also be possible to combine methods of distribution. For
instance, 50% of the ex-spouse's interest in the present value of the
pension could be immediately distributed, and payment of the remain-
der of the spouse's interest in the pension could be delayed. A trial
court could also simply divide the property in such a way that the
pension holder retains all rights in the plan and the non-pension
holding party simply would be awarded more of the remainder of the
marital assets.

The lower court is to take further evidence concerning the distribution and valuation of the parties' pension interests.

Defendant also argues that apart from the question of whether the pension should have been distributed as a marital asset, the lower court abused its discretion in the distribution of the marital property in any case. The division of marital property is entrusted to the trial court's discretion. This Court will not reverse the trial court's division of marital property unless it is convinced that, sitting in the lower court's position, it would have reached a different disposition. *McLain v McLain,* 108 Mich App 166, 168-169; 310 NW2d 316 (1981).

Defendant argues that she is entitled to more than the 50% of the property she was awarded because she took care of the family and facilitated her husband's ability to earn seniority in his factory job. Without regard to plaintiff's pension, in light of the trial court's findings, and considering the factors enumerated in *Johnson v Johnson,* 346 Mich 418, 431; 78 NW2d 216 (1956), we see no problem with the distribution of marital assets made by the court.

We reject defendant's argument that the seniority plaintiff earned in his job is an asset like the medical degree under consideration in *Moss v Moss,* 80 Mich App 693; 264 NW2d 97 (1978), *lv den* 402 Mich 946 (1978). In *Moss,* the wife actually financially supported her husband to enable him to acquire a medical degree. Here, plaintiff's seniority was not a product of learning new skills which required full-time pursuit of formal education. Defendant was not required to financially support plaintiff while the latter earned seniority. Additionally, job seniority is simply not an asset

like a medical degree. Job seniority is only useful so long as the worker remains on the company payroll. Substantial seniority generally insulates one from layoffs and may provide preferential treatment in respect to opportunities for overtime. Seniority does not generally improve one's basic capacity to earn. The possessor of a medical degree, however, is virtually guaranteed substantial earnings. One who obtains a medical degree has vastly improved his ability to earn. The possession of a medical degree has intrinsic value, unlike seniority rights, which are only valuable within the context in which they were earned. For these reasons, we find no error in the lower court's refusal to consider plaintiff's seniority when it divided the marital assets.[7]

Defendant next asserts that the trial court abused its discretion in its award of child support. Specifically, defendant asserts that when Charles Boyd turned 18, the court should have increased the weekly support allowance for Steven Boyd from $45 to $65 per week. The friend of the court recommended this increase. In *Meeker v Harring-*

---

[7] Judge CAVANAGH would require that seniority be separately considered as a factor in the distribution of the marital assets upon dissolution of a marriage. While I disagree, I do not believe we are all that far apart on this issue. The reason why Judge CAVANAGH would consider the plaintiff's seniority rights in this case seems to be because of the length of the marriage and the fact that when the parties contracted to marry, they agreed that their marital relationship would be traditional. I agree that the many years of the couple's married life and their agreement to have a traditional marriage are both factors which the trial court should, and I believe did, consider in this case. I do not agree, however, with the further proposition that plaintiff's acquisition of seniority rights has any independent significance apart from these factors. I further believe that disagreement on this issue will have no practical effect in the division of property in future divorce cases. As this case amply demonstrates, by Judge CAVANAGH's concurrence in my opinion except as to the seniority rights issue and his concurrence in the overall result, the failure to consider a party's seniority rights has little, if any, tendency to deprive the trial court of its power to reach an equitable result in the distribution of the marital assets.

*ton,* 15 Mich App 125, 127; 166 NW2d 276 (1968), this Court said:

"It is not uncommon for the trial judge to make ready reference to a support schedule prepared by the office of the friend of the court, but such schedules should not be used mechanically; they are at best a guide to the trial judge. It is elementary that each case must be decided upon its own particular merits based upon those facts shown in the testimonial record."

The trial court was not bound by the friend of the court's recommendation, and we do not believe the record before us shows an abuse of discretion in the court's failure to follow it.

Defendant also argues that plaintiff should have been required to pay support for Steven Boyd until he graduates from high school, approximately one month after he turns 18 years of age. We disagree. Absent an express agreement between the parties to provide for support beyond the child's 18th birthday, the Age of Majority Act, MCL 722.51 *et seq.;* MSA 25.244(51) *et seq.,* precludes such a result. Compare *McNames v McNames,* 93 Mich App 477; 286 NW2d 892 (1979), and *Wagner v Wagner,* 105 Mich App 388; 306 NW2d 523 (1981).

Defendant's final claim on appeal is that the trial court should have awarded permanent alimony, and not simply alimony in gross. This Court will not modify an alimony award unless it is convinced that, sitting in the position of the trial court, it would have reached a different result. *McLain, supra.*

In *McLain* we stated that the following factors should be considered in determining whether permanent alimony should be awarded:

"1. The past relations and conduct of the parties. * * *

"2. The length of the marriage. * * *

"3. The ability of the parties to work. * * *

"4. The source of and amount of property awarded to the parties. * * *

"5. The age of the parties. * * *

"6. The ability of the parties to pay alimony. * * *

"7. The present situation of the parties. * * *

"8. The needs of the parties. * * *

"9. The health of the parties. * * *

"10. The prior standard of living of the parties and whether either is responsible for the support of others. * * *

"11. General principles of equity. * * *" *Id.*, 171-172. (Citations omitted.)

Factors cutting in favor of an award of permanent alimony (to a lesser or greater degree) are the length of the marriage, defendant's lack of marketable skills (ability to work), defendant's age and her minor medical problems. The other factors, with the exception of general equitable principles, are basically neutral criteria. Insofar as general equity is concerned, however, the trial court determined that, based upon what he heard during trial, an award of alimony would be "contra-indicated". Defendant testified that she believed she should not have to work and that plaintiff owed her support for the rest of her life.

Although more factors favor an award of permanent alimony than disfavor one, the determination of an appropriate alimony award is not simply reached by counting up factors and declaring a winner. *Cf. Dempsey v Demspey*, 96 Mich App 276, 289; 292 NW2d 549 (1980), *aff'd as modified* 409 Mich 495; 296 NW2d 813 (1980). We believe the trial court's decision not to award permanent alimony is justified. It is apparent from defendant's testimony that she does not believe she should be

obligated to attempt to support herself. The trial court could reasonably conclude that this intransigent attitude outweighed those factors which slightly favored permanent alimony. The award of alimony in gross, and the other monies defendant received upon divorce, give her some time to attempt to develope marketable skills so that she can support herself.

We do modify the award of alimony to the following extent, however. We believe that the possibility of future periodic payments of alimony should not be foreclosed. It is possible, try as she might, because of her age, health problems, and the like, that defendant will not be able to fully support herself for many years to come, if at all. We are dealing here with a marriage of over 30 years' duration. When the marriage was entered into, the parties apparently agreed that their relationship would be very traditional with the husband working and the wife staying home to raise the children. Due to this traditional marital relationship, defendant has not developed marketable work skills. Moreover, defendant's absence from the work force for so many years puts her at a disadvantage in finding suitable employment. While we agree with the lower court that it seems defendant does have the ability to support herself, we do not know if this assessment is realistic at this time. As such it may be equitable at a later time to require plaintiff to pay further alimony. See and compare *Metcalf v Metcalf,* 28 Mich App 442, 448; 184 NW2d 560 (1970), and *Ashwell v Ashwell,* 31 Mich App 172; 187 NW2d 494 (1971). Thus, to the extent of reserving the possibility of future alimony, we modify the lower court's judgment.

Affirmed in part; reversed in part, and re-

manded for proceedings consistent with this opinion. We do not retain jurisdiction.

M. F. CAVANAGH, P.J. *(concurring).* I concur with the conclusions expressed in my brother BRONSON's opinion. I do so separately so as not to be interpreted as ignoring plaintiff's job seniority in the distribution of the marital assets. While I am in agreement that seniority is not an asset like the medical degree in *Moss v Moss,* 80 Mich App 693; 264 NW2d 97 (1978), *lv den* 402 Mich 946 (1978), it nonetheless is a factor to be considered in the distribution of marital assets and/or the award of alimony.

More than 30 years previously, these parties entered into this marriage contract with the understanding that the husband would work and improve his job skills and income earning capacity while the wife maintained the household and primarily raised and cared for the children. While I agree with my brother that plaintiff's seniority was not a product of learning new skills which required full-time pursuit of formal education, it nonetheless was acquired to no small degree by virtue of defendant's willingness to abide by the arrangement and remove herself from the job market. Now, some 30 years later, this arrangement is to be terminated but the parties are far removed from the equal footing they enjoyed at the outset of this contractual arrangement. Defendant's lack of job skills and experience, her age, and her general absence from the job market mandate that plaintiff's corresponding job seniority be included in the equation which ultimately terminates this contract. As our ultimate disposition of this case on appeal arrives at an equitable disposition encompassing the foregoing concern, I concur.

BEASLEY, J. *(concurring in result only).* I concur in Judge BRONSON's result, but not necessarily in all he says. For example, he states:

"In this case, the court could defer distribution of any pension benefits until plaintiff begins to receive them. Such payments would resemble alimony, but would be considered the delayed distribution of marital assets. Whether such a method of distribution should be used in this case, or any case, rests within the trial court's discretion."

I am not yet prepared to rule out the possibility of solving the pension benefit problem in divorce cases within the framework of alimony provisions. Payments need not only "resemble" alimony, but perhaps in some cases such possible future retirement payments should be alimony. I would not limit the trial judge in how he goes about awarding defendant wife a more equitable share.