PER CURIAM.
This is a divorce case.
The husband filed a complaint for divorce in 1991. The wife then filed a counterclaim seeking custody of the parties’ children and alimony, as well as a one-half share of the husband’s military retirement benefits.
Following an ore tenus proceeding, the trial court entered an order granting the divorce. The wife was awarded custody of the children and $1000 per month alimony, along with certain marital property. The husband was ordered to pay $675 per month child support. The trial court denied the wife’s request for a share of the husband’s retirement benefits.
Both parties filed motions to alter or amend the judgment, challenging different aspects of the trial court’s judgment. After a hearing on these motions, the trial court altered its judgment regarding two matters that are not before us on review. Both parties appeal, and several non-profit organizations have joined to file an amicus curiae brief concerning the issues raised by the wife. We will first address these issues.
The wife challenges the trial court’s refusal to award her a portion of her husband’s military retirement benefits. The court based its judgment on Kabaci v. Kabaci 373 *531 So.2d 1144 (Ala.Civ.App.1979), wherein we held that a military pension may not be made the basis of either alimony in gross or a property settlement in a divorce action.
In Kabaci, a husband appealed after the trial court awarded his wife a portion of his military retirement as part of a property settlement in the parties’ divorce. The husband argued that the benefits were his separate property and thus not subject to division under Ala.Code 1975, § 30-2-52. In counterpoint, the wife claimed that the pension had accrued due to the dual efforts of the parties during the marriage, thus entitling her to a share of it as part of the property settlement.
After noting that there was no specific authority in Alabama on the issue presented, this court determined that the husband’s retirement benefits could be used as a source of income from which to pay periodic alimony. We held as follows:
“After an exhaustive search, we have been unable to find any authority for a court to treat an award of retirement benefits as either a property settlement or alimony in gross. In the absence of sound authority for so classifying such an award, we decide that such cannot be done by the courts of this state.”
Kabaci at 1146.
The rule that was established in Kabaci has since been consistently followed by this court, and has also been extended to disallow the division of non-military retirement benefits in a divorce. Steelman v. Steelman, 512 So.2d 776 (Ala.Civ.App.1987); Tinsley v. Tinsley, 431 So.2d 1304 (Ala.Civ.App.1983); see also Cole v. Cole, 538 So.2d 21 (Ala.Civ.App.1987) (corporate pension plan not divisible); Pedigo v. Pedigo, 413 So.2d 1154 (Ala.Civ.App.1981), writ quashed, Ex parte Pedigo, 413 So.2d 1157 (Ala.1982) (federal civil service benefits not divisible).
The wife argues that the Kabaci rule discriminates against females and should be overruled as a violation of the equal protection clause of the Fourteenth Amendment of the U.S. Constitution. She concedes that the Kabaci rule is not discriminatory on its face, because it applies to the pensions of both male and female retirees; rather, she contends that it is discriminatory in operation.
To support this contention at trial, the wife relied upon a certain table contained in the “Department of Defense Statistical Report on the Military Retirement System” published in 1989. The table indicates that men comprise 97% of the total military retirees in the nation who are now receiving military pensions from the federal government. Based on this statistic, the wife asserts that the Kabaci rule is inherently discriminatory in its application against military wives.
Attempting to prove broad sociological propositions by statistics is a dubious business, and one that inevitably is in tension with the normative philosophy that underlies the Equal Protection Clause. Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Here, the figures shown by the table reflect the male-dominated nature of the military in the 1950’s and 1960’s, as the soldiers who served during that period have now reached retirement age. The table does not reflect the increasing number of females who have since embarked on a military career, and whose pensions are protected under the Kabaci rule. The table concentrates on national statistics and thus does not indicate the ratio of male to female military retirees in Alabama, where Kabaci is singularly applicable. Moreover, by basing her argument on such a table, the wife does not recognize that the Kabaci rule also protects the pensions of non-military retirees, whose numbers reflect the more gender-balanced civilian workforce. After reviewing the evidence presented by the wife, we find that the wife has failed to establish that the Kabaci rule is gender-based. We therefore pretermit a further equal protection analysis.
The wife next argues that the Kabaci rule should be reversed because “sound authority” for doing so can now be found in state and federal law. The wife vigorously argues that, since Kabaci, the federal government and every state except Alabama has adopted legislative and/or decisional law specifically allowing the division of pensions in a property settlement. She insists that, in the face of these authorities, the Kabaci rule has been rendered obsolete.
*532 In 1981, the United States Supreme Court held that federal law precluded a state trial court from applying state community property law principles to military non-disability retirement pensions in order to make a property settlement in a divorce proceeding. McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). The U.S. Supreme Court noted that Congress could, in its discretion, pass legislation that would protect the ex-spouse of a service member. As a result of McCarty, all states were compelled to adhere to the position taken by Alabama in Kabaci.
In direct response to McCarty, Congress passed the Uniformed Services Former Spouses’ Protection Act (USFSPA), 10 U.S.C. § 1408 (1982). The Act provides in pertinent part:
“Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.”
Tit. 10 § 1408(c)(1), U.S.Code.
Congress also amended the Employee Retirement Income Security Act (ERISA), which governs the rights of participant-employees under qualified retirement plans of private employees, in order to allow the vested retirement plan benefits of a spouse to be divisible in a property settlement. See Public Law No. 98-397, 98 Stat, 1426, codified variously in Titles 26 and 29, U.S.Code (1974), et seq. As a consequence of these Congressional enactments, states may allow the division of retirement plan benefits of one spouse to the other, regardless of whether the pension is from the military, civil service, or private sectors.
Federal law, particularly the USFSPA, does not mandate such a division of military retirement pay in divorce proceedings. On the contrary, legislative history clearly states the objective of the USFSPA as follows:
“The purpose of this provision is to place the courts in the same position that they were in on June 26,1981, the date of the McCarty decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal preemption found to exist by the United States Supreme Court and permit state and other courts of competent jurisdiction to apply pertinent state or other laws in determining whether military retired or retainer pay should be divisible.”
Senate Report No. 97-502, 97th Cong., 2d Session 16, reprinted in 1982 U.S.Code Congressional and Administrative News 1555, 1611.
From this, it is apparent that in passing the USFSPA, Congress merely removed the federal impediment preventing the exercise of state law as it existed prior to McCarty. Indeed, a significant number of the states which now allow the division of military pension benefits did so before the McCarty decision, and merely reinstated this policy after the enactment of the USFSPA made it permissible to do so. See DeGryse v. DeGryse, 135 Ariz. 335, 661 P.2d 185 (1983); Smith v. Smith, 458 A.2d 711 (Del.Fam.Ct.1983); Cassiday v. Cassiday, 68 Haw. 383, 716 P.2d 1133 (1986); Griggs v. Griggs, 107 Idaho 123, 686 P.2d 68 (1984); In re Dooley, 137 Ill. App.3d 401, 92 Ill.Dec. 163, 484 N.E.2d 894 (1985); Little v. Little, 513 So.2d 464 (La.Ct.App.1987); Walentowski v. Walentowski, 100 N.M. 484, 672 P.2d 657 (1983); Cameron v. Cameron, 641 S.W.2d 210 (Tex.1982); Pfeil v. Pfeil, 115 Wis.2d 502, 341 N.W.2d 699 (Ct.App.1983); see also Uniformed Services Former Spouses’ Protection Act Update, 27-50-210, The Army Lawyer. As emphasized by the wife, some states which did not previously allow a division of pension benefits have now changed their policy through ease law; however, many of these changes were made only after state legislation was passed in response to the USFSPA. Arthur v. Arthur, 519 N.E.2d 230 (Ind.Ct.App.1988); In re Harrison, 13 Kan.App.2d 313, 769 P.2d 678 (1989); Stokes v. Stokes, 738 P.2d 1346 (Okl.1987); see also Nisos v. Nisos, 60 Md.App. 368, 483 A.2d 97 (1984). The United States Supreme Court has ruled that states may only allow the division of disposable military retirement benefits in a property settlement, Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. *533 2023, 104 L.Ed.2d 675 (1989), and some states further limit the divisible amount to vested pensions. Durham v. Durham, 289 Ark. 3, 708 S.W.2d 618 (1986); Gallo v. Gallo, 752 P.2d 47 (Colo.1988); In re Bickel, 533 N.E.2d 593 (Ind.Ct.App.1989); Boyd v. Boyd, 116 Mich.App. 774, 323 N.W.2d 553 (1982). Other states have broad statutes which give a trial court great discretion to divide marital property, but simply have not firmly settled upon a position regarding military retirement benefits. See generally Conn.Gen.Stat. § 46b-81 (1986); R.I.Pub Laws, § 15-5-16.1 (1988); Vt.Stat.Ann.Tit. 15, § 751 (1988).
After reviewing these authorities, we do not agree with the wife that the states have reached a consensus on this issue, leaving Alabama as a lone dissenter. Rather, it is clear that each state has addressed the issue based on its own legal history and legislative mandate, and Alabama must do the same.
Neither McCarty nor the USPSPA has altered Alabama’s law which regards the retirement benefits of one spouse to be his/ her separate property and not subject to division under Ala.Code 1975, § 30-2-52. The Alabama Supreme Court has declined to address Kabaci, Pedigo v. Pedigo, 413 So.2d 1154 (Ala.Civ.App.1981), writ quashed Ex parte Pedigo, 413 So.2d 1157 (Ala.1982), and our legislature has remained silent upon this issue in the thirteen years since Kabaci was decided. After careful consideration of the authorities presented from other jurisdictions, we are not persuaded to deviate from the authority of our own state at this time.
We would emphasize that in a divorce proceeding, the trial court should be aware of many factors in effecting a property settlement, including the disparities in the parties’ health, station in life, and future prospects. Kabaci, supra. Although a military pension itself is not divisible, the fact that one spouse has such a considerable asset should be weighed by the trial court in effecting a just property settlement or awarding alimony in gross. Of course, the court may also consider the pension as one basis of income upon which to award periodic alimony, and it appears that the trial court did so in the instant case. In view of the foregoing, we find no error in the trial court’s refusal to divide the husband’s military pension.
We now turn to address the issue raised by the husband on appeal. He argues that the trial court erred in computing his child support obligation under the guidelines set out in Rule 32, Alabama Rules of Judicial Administration.
In order to compute a child support obligation under Rule 32, the trial court must determine the gross income of each parent, including income from “preexisting periodic alimony.” Rule 32(C)(1), (B)(2)(i), ARJA. The husband suggests that the trial court should have included the wife’s periodic alimony as part of her gross income, thereby lowering his child support obligation. We find no merit in the husband’s argument. Inasmuch as the provisions of this decree become effective concurrently upon its entry, we find that in this case, there was no “preexisting periodic alimony” for the trial court to consider in computing the wife’s gross income. The trial court did not err in its calculation of the wife’s gross income, thus its judgment on this issue is affirmed.
The wife’s request for attorney’s fees on appeal is denied.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.
THIGPEN, J., recuses himself. .