This case was previously before this court for a determination of whether the trial court erred in granting a divorce, dividing the property, and awarding alimony based on the grounds of adultery. We reversed the judgment and remanded the case with instructions for the trial court to grant the divorce on the grounds of incompatibility and to set the alimony and property settlement without considering the grounds of adultery. For a detailed recitation of the facts in this case, see Rowe v. Rowe, 575 So.2d 584 (Ala.Civ.App. 1991).
In the present case the husband again appeals from the trial court's judgment, which granted the divorce on the ground of an irretrievable breakdown of the marriage, made the same property division as previously made, and reduced the previous alimony award from $2,000 to $1,900 per month. We affirm in part, reverse in part, and remand.
The trial court's judgment is considered correct after an ore tenus proceeding and may be set aside only when it is found to be plainly and palpably wrong. Euler v. Euler, 515 So.2d 710
(Ala.Civ.App. 1987); Lucero v. Lucero, 485 So.2d 347
(Ala.Civ.App. 1986). In addition, exercise of the court's discretion, although reviewed with a presumption of correctness, will be reversed if it is so unsupported by the evidence as to be deemed arbitrary and unjust. Johnson v.Johnson, 426 So.2d 460 (Ala.Civ.App. 1983).
The division of property in a divorce case need not be equal, but must be equitable. Bell v. Bell, 509 So.2d 912
(Ala.Civ.App. 1987). It is not the function of this court to reweigh the evidence or to substitute our judgment for that of the trial court. Lewis v. Lewis, 494 So.2d 105 (Ala.Civ.App. 1986). However, the trial court's decision is subject to review and revision by this court. Seamon v. Seamon, 587 So.2d 333
(Ala.Civ.App. 1991).
The conduct of the parties in regard to the cause of the divorce may be considered by the trial court in its property division, and this is true even when the grounds of the divorce are incompatibility. Allen v. Allen, 565 So.2d 653
(Ala.Civ.App. 1990). We further note that it is the duty of the trial court to comply with an appellate mandate. Erbe v. Eady,447 So.2d 778 (Ala.Civ.App. 1984).
On remand the trial court stated that
 "[e]ven though this court is of the opinion that [the wife] met the burden necessary to prove adultery, such finding was by far not the primary consideration in the award of alimony and division of *Page 1050 
property. Among the factors considered were the conduct of each with regard to the cause of the divorce, the future earning prospects of the parties, the financial circumstances of each, their education and experience, their earning records, accustomed standard of living, the length of the marriage, and the source, value, and type of property."
The trial court then stated that, although there is no evidence which indicates that the wife was at fault in bringing about the breakdown of the marriage, "the same cannot be said of the [husband]." It then recited the facts as cited in the original case regarding the phone calls made by the husband to the secretary and the time that he spent at her home, as well as the husband's and his daughter's moving to Montgomery and leaving the wife in Jacksonville. The trial court stated that the husband's relationship with another woman and his attitude and conduct toward the wife were the primary causes for the breakup of the marriage.
The trial court further found that the wife resigned her teaching position when the parties married to care for the home and their children by previous marriages; that the majority of the funds were accumulated in the husband's name in retirement accounts; that he deposited $500 per month in one retirement account for a total contribution of over $50,000; that other funds were in real estate and at the Birmingham Credit Union; and that, although the husband will be able to retire with a substantial income, the wife would have to work past her seventy-seventh birthday in order to retire under the teacher's retirement system and that such income would not support her in the manner to which she had become accustomed.
The trial court then ordered that the parties sell the marital home and adjoining lot and divide the net proceeds after the payment of any outstanding mortgages, liens, or other encumbrances, and costs of the sale. Until the home is sold, the wife was given the use of the home and the responsibility for maintenance, and the husband was ordered to pay the mortgage payments. The wife was awarded the real estate owned by her and is to pay any indebtedness on the property. She also was awarded the $14,000 remaining of the $45,000 that she had previously borrowed against the equity line of credit on the marital home; $45,000 on deposit with the Birmingham Credit Union; her Individual Retirement Account in the amount of $2,240; and funds, stocks, and bonds in the amount of $10,000. The husband was awarded the remainder of the stocks, bonds, certificates of deposit, or other funds and was ordered to maintain the wife as beneficiary of two of his retirement accounts. He also was ordered to pay $1,900 per month in periodic alimony to the wife.
The husband contends that the trial court did not comply with the order of this court to set the alimony and property settlement without the consideration of the ground of adultery. He also contends that the trial court abused its discretion by setting an excessive award that, he claims, was not supported by the evidence, that the trial court improperly considered the retirement benefits, and that the award was contrary to statute.
Although the trial court stated that factors other than adultery were the primary consideration in its award of alimony and division of property, it ordered a property settlement and awarded alimony after stating that it still believed that the wife had met the burden of proving adultery. In spite of the previous opinion of this court, which ordered that the trial court set the alimony and property settlement without considering the grounds of adultery, the only change in the trial court's prior order was a $100 decrease in the amount of alimony, an action which leads this court to believe the contention of the husband that the trial court did not follow the order of this court. See Erbe, 447 So.2d 778. This is further evidenced by the trial court's failure to grant the divorce on the grounds of incompatibility, as ordered by this court. However, although the trial court taints its order with the adultery comment, it otherwise has studiously and meticulously addressed the factors that it considered in the present award. Because we did not address *Page 1051 
the various aspects of the trial court's order in our previous opinion, we will now consider the contentions of the husband and the factors for setting alimony to determine whether the trial court abused its discretion in setting the present award.
The husband claims that, regarding the factors that the trial court stated it considered in its division of the property and award of alimony, there are deficiencies in the evidence. He states that there is no credible evidence regarding the value of the two homes, the marital residence and the home owned by the wife, and that this is required by § 30-2-51, Ala. Code 1975. The husband further states that he provided a college education and purchased an automobile for the wife's son in lieu of the wife's selling her house to pay those expenses.
Section 30-2-51 provides as follows:
 "If either spouse has no separate estate or if it be insufficient for the maintenance of such spouse, the judge, upon granting a divorce, at his discretion, may order to such spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family; provided, however, that the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the trial judge finds from the evidence that such property, or income produced by such property, has been used regularly for the common benefit of the parties during their marriage."
However, regarding the husband's claim, he states that the marital residence was for sale in 1988 with an asking price of $171,900. The trial court could have considered this amount as the approximate value of the home. Furthermore, the home owned by the wife prior to the marriage was leased by her to others for $350 per month and was mortgaged for $2,500 with a payment of $240 per month, an amount that is clearly not sufficient for the maintenance of the wife. See § 30-2-51. We find no error here.
However, the husband also claims that the trial court erred in including the lot adjoining the marital home to be sold and divided by the parties. The wife does not dispute his statement that the lot was not used for the common benefit of the parties and that, according to § 30-2-51, it should not be considered as property to be divided between the parties. Therefore, we hold that the lot adjoining the marital home should not be included in the property to be sold and divided by the parties and that the lot should be awarded to the husband as property acquired prior to the marriage.
The husband next claims in his brief that the fault in the breakup of the marriage was caused by his job in Montgomery and the problems with his daughter. He states that the "battle" between his daughter and the wife is "an example of previous acts of [the wife] in taking away meaningful and important people and things from [the husband]." However, the husband in his brief does not explain this statement sufficiently for this court. A review of the record does indicate that the wife had difficulty handling the daughter's behavior problems to the extent that counseling was necessary for the daughter and that she had to deal with the problems when the husband began to spend most of the week in Montgomery. However, we cannot find error in the trial court's finding that the wife was not at fault in the breakup of the marriage.
The husband, citing Thompson v. Thompson, 532 So.2d 1027
(Ala.Civ.App. 1988), and Kabaci v. Kabaci, 373 So.2d 1144
(Ala.Civ.App. 1979), further states that retirement benefits may not be a proper consideration on which to base a property settlement or alimony in gross award. He claims that the trial court improperly considered these benefits in dividing the property and awarding alimony and that the wife received essentially all the liquid assets held by the husband. He claims that he will be left with only his retirement assets and one-half of the remaining equity in the house after sale. However, we note that "[a]lthough a military pension itself is *Page 1052 
not divisible, the fact that one spouse has such a considerable asset should be weighed by the trial court in effecting a just property settlement or awarding alimony in gross." Vaughn v.Vaughn, [Ms. 2900494 and 2900494-X, May 29, 1992], 1992 WL 111647, * 3 (Ala.Civ.App. 1992). See also King v. King,601 So.2d 1025 (Ala.Civ.App. 1992).
In Thompson, this court reversed the judgment of the trial court where the wife was awarded a sum which equalled one-half of the husband's retirement benefits, which were his only asset. In the present case the wife received $45,000 from the Birmingham Credit Union and $10,000 in securities, for a total of $55,000. She was also allowed to retain the remaining $14,000 of the $45,000 borrowed on the equity line of credit. That $45,000 debt will be paid when the house is sold and one-half will come from each party's share. It appears to this court that the husband, therefore, is providing $22,500 of his share of the equity in the marital home to the wife, of which $15,000 was used for living expenses by the wife prior to the divorce and the remaining $7,000 was provided as a lump sum to the wife. Thus, without considering the sum used for living expenses prior to the divorce, the trial court awarded $62,000 in property to the wife, in addition to her share of the equity in the home. These funds were available without consideration of the approximately $200,000 or more in the husband's retirement accounts.
The husband was awarded the remainder of the financial assets, which included a certificate of deposit worth $4,000 and investments of $5,000 in a radio station and $3,000 in a bank. The husband testified that he had $88,000 in certificates of deposit with the Birmingham Credit Union, from which he made a gift of $49,000 to his mother in August 1988, prior to the filing of the divorce complaint in January 1989. The trial court could have considered this substantial pre-divorce gift as part of the husband's assets, in which case he received assets totaling $61,000. We find no specific mention of any consideration by the trial court of the husband's contribution to the wife's son's education and automobile.
However, we conclude that the trial court made an equitable distribution and that it was done properly without the consideration of the amount in the retirement accounts. Although the division of property need not be equal, it must be equitable. Bell, 509 So.2d 912. In addition, consideration of the retirement accounts strengthens our conclusion that there is no error here.
The husband also claims that the trial court improperly ordered that the wife be named the beneficiary of two of the retirement accounts. Because retirement assets are not divisible, Vaughn, 1992 WL 111647; Kabaci, 373 So.2d 1144, we agree and hold that the trial court erred in ordering that the wife be named as a beneficiary on these accounts.
The husband further claims that the award of periodic alimony is excessive and can only be explained by the trial court's considering the alleged adultery or by its considering the retirement accounts, which accounts, he claims, are speculative and future income. He argues that future income may not be considered in setting periodic alimony. Hardin v. Hardin,541 So.2d 563 (Ala.Civ.App. 1989); Slaton v. Slaton, 455 So.2d 34
(Ala.Civ.App. 1984). He states that only his current net earnings in the amount of $5,091.66 per month could be considered by the court. We agree and, therefore, will consider whether the grant of $1,900 in alimony, without the consideration of the retirement accounts or the allegation of adultery, was an abuse of discretion.
The factors to be considered in determining the award of alimony include the parties' earning ability and their future prospects, their ages and health, the length of the marriage, the standard of living during the marriage, the value and type of property, and the conduct of the parties. Kuhnel v. Kuhnel,535 So.2d 164 (Ala.Civ.App. 1988).
In the present case the husband has a substantial job with the State of Alabama and earns $88,000 a year. The wife was a high school English teacher at the time of *Page 1053 
the marriage; however, she has not worked during the marriage so that she could care for the home and the children. She has a lapsed teacher's certificate and a master's degree in counseling. She made two unsuccessful attempts to find employment at a university. The wife was approximately sixty-one years of age at the time of the original hearing in November and December 1989, and the husband was approximately fifty-five years of age. At the time of the hearing the parties had been married for twelve years. The trial court found that the husband's treatment of the wife placed him at fault in the breakup of the marriage.
The marriage lasted twelve years and there were no children born of the marriage; however, children of each of the parties lived with them and were cared for by the wife. The wife has been out of the employment market since 1977 and is over sixty years of age, facts which could be limiting in attempts to reenter the job market. However, we note that the trial court's statement in its order that the wife would have to work past her seventy-seventh birthday in order to retire appears to be in error. See §§ 16-25-11.7 and -14, Ala. Code 1975. The wife indicated that her monthly living expenses would be approximately $2,400; however, $106 of that amount was for household help that she no longer employed at the time of the hearing. She also listed $500 for a home mortgage payment or rent, but there was no evidence that she would have such an expense, particularly in light of the fact that she owns a home on which the mortgage is probably paid at the present time. Her requested expenses would now be substantially less than she claimed. In view of this change, the relatively short length of the marriage, and the wife's education and job qualifications, we find that, although the facts support a grant of alimony to the wife, the trial court erred in the amount of alimony that it granted and that the award is excessive. Based on the circumstances here, we find that it is in the best interest of the parties for this court to establish an equitable amount of alimony for the husband to pay to the wife, which we conclude, under the facts of this case, to be $1,600 per month. Seamon,587 So.2d 333; Johnson, 426 So.2d 460.
The judgment is affirmed in part and reversed in part, and the cause is remanded with instructions for the trial court to enter an order consistent with this opinion and specifically (1) granting the divorce on the grounds of incompatibility, as previously ordered, (2) omitting any references to adultery, (3) awarding the lot adjoining the marital home to the husband, (4) removing the requirement that the husband name the wife as beneficiary of the TIAA and CREF accounts, (5) ordering the husband to pay to the wife the sum of $1,600 per month as alimony.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.