Following an ore tenus proceeding, the trial court entered an order divorcing the parties on the grounds of incompatibility of temperament and an irretrievable breakdown of the marriage. Custody of the parties' minor child was awarded to the mother, with the father having visitation rights. The father was ordered to pay $300 per month to *Page 607 
the mother as child support, and he was ordered to pay $100 per month to the wife as periodic alimony. No alimony in gross was awarded. Concerning stock given to the mother by the parents of the father, the trial court ruled that such stock "was in the nature of an inter vivos gift. The Court does not consider this gift to be in the form of alimony but it was a factor in the determination of the [father's] spousal support obligation." Also, the father was ordered to maintain a $50,000 life insurance policy on himself with the mother as beneficiary. Finally, the trial court awarded the mother all household furniture, fixtures, silverware, other personal property, and $1,000 as an attorney's fee. The mother appealed.
The mother's first issue is whether the trial court abused its discretion in its award of alimony and its division of marital assets. She relies primarily on Rowe v. Rowe,601 So.2d 1048 (Ala.Civ.App. 1992), and contends that the trial court's decision should be reversed based on the factors in Rowe and the particular circumstances of this case.
In Rowe, this court stated that a trial court's judgment is presumed to be correct when it is based on ore tenus evidence and the judgment will be disturbed only when it is found to be plainly and palpably wrong. We also stated, however, that the trial court's judgment will be reversed if it is so unsupported by the evidence as to be considered arbitrary and unjust. Id.
Furthermore, the division of property in a divorce case need only be equitable, not necessarily equal. Id. In determining alimony, the trial court is to consider "the parties' earning ability and their future prospects, their ages and health, the length of the marriage, the standard of living during the marriage, the value and type of property, and the conduct of the parties." Id. at 1052.
The record revealed that the parties had been married for nearly 25 years at the time of trial. Two children were born of the marriage, but only one, Benjamin, was still a minor. The father testified that the mother worked as an elementary school reading teacher for half of their marriage and earned nearly $20,000 per year. Tax forms for the years 1989 and 1990 revealed that the father's income was $13,500 and $12,873, respectively. The record further revealed that, in September 1989, the mother was involved in a serious automobile accident which caused a closed-head injury resulting in disability and the loss of her teaching position. The husband admitted in his testimony that the mother suffers from an inability to communicate because of the accident and that she also has cataracts on her eyes. He contended, however, that the mother was improving and that she could perform some type of work to earn additional income.
Our reading of the record showed that the mother's testimony was delivered in a very broken and elemental format. On direct examination, she indicated that her teaching income had been used for general family expenses. Also, she aided the father in his previous business of buying and selling vehicles by signing bank notes for him to purchase inventory. After her accident, however, she stated that she began receiving rehabilitative training for her speech and she also began taking weekly lessons in an attempt to learn a trade; namely, upholstering. She once earned $100 from her brother and sister-in-law for pillows she made for the redecoration of their home. She reported making no other income from upholstering, however. According to the mother, she filed for divorce after learning that the father, without her knowledge or permission, signed her name to an insurance settlement check and used the money for his personal purposes. The check was in excess of $31,000, and was issued in connection with the mother's accident.
Although the father's testimony indicated that at least two insurance checks were sent to the parties as a result of the mother's accident, the record was unclear as to the total amount of the proceeds. Of these proceeds, however, the father admitted spending $7,410 for himself and then contended that he used the balance to pay family expenses. The father testified that the approximately $31,000 check mentioned earlier was deposited in a bank account and used by the father to pay bank notes, purchase prices for vehicles, and various other expenses, both personal and business. The father stated that *Page 608 
the checks were payable jointly to the parties.
The record further revealed that in 1989 the father was released from all personal debt liability by the U.S. Bankruptcy Court in Montgomery. The father testified that after changing occupations following his bankruptcy discharge, he earned $23,000 in 1991 from wages and rental income, and that he was in the tire recycling business at the time of trial. He stated that this was a growing business in which he had very little overhead and that in January 1992 he made $2,400. He acknowledged that a projection based on this amount would translate into wages of $28,800 for all of 1992. He also testified that he receives $500 per month in stock proceeds from a corporation chartered by his parents.
At the time of trial, the mother's monthly income consisted of $576 in Social Security disability benefits, $189.84 in retirement benefits from the state, and $500 in stock proceeds of the same character which the father receives each month. Also, she had a bank account containing $6,700, which constituted all of her savings. The record revealed that the parties' minor son, Benjamin, received $289 per month in Social Security benefits, but the checks were payable to Benjamin, and the mother testified that he spent the money on his school and personal expenses.
The stock proceeds paid monthly to each party represent rental payments which the corporation receives from the State of Alabama. The stock was a gift from the father's parents to their children and their children's spouses. The corporation's attorney testified, however, that the $500 monthly dividend payments to the mother could be eliminated, under certain circumstances, as a result of voting by the corporation's directors; i.e., the father's family.
Based on the foregoing facts, and in consideration of the factors of Rowe, 601 So.2d 1048, we hold that the trial court abused its discretion as to the issue of alimony. There is an obviously sharp contrast in the parties' positions as to the first few factors of Rowe; namely, their earning abilities and future prospects, and their health. Also, we reiterate that this was a lengthy marriage into which the mother contributed a substantial amount of financial support, especially in the latter stages when the father contributed relatively little. Therefore, we remand for the trial court to make an upward revision of periodic alimony. We note that periodic alimony, which has as its purpose the financial support of the recipient spouse, may be modified at any time when there is a change in the financial status of either or both spouses. White v. White,589 So.2d 740 (Ala.Civ.App. 1991).
We disagree with the mother's claim that the trial court also erred in its division of marital assets, especially since she received all of the household furniture, fixtures, silverware, and other personal property. The mother cites us to Ala. Code 1975, § 30-2-51, and states that the trial court also should have awarded her the father's interest in the corporation.
This section provides the following:
 "If either spouse has no separate estate or if it be insufficient for the maintenance of such spouse, the judge, upon granting a divorce, at his discretion, may order to such spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family; provided, however, that the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the trial judge finds from the evidence that such property, or income produced by such property, has been used regularly for the common benefit of the parties during their marriage."
Ala. Code 1975, § 30-2-51. (Emphasis added.)
First, we cannot say that the trial court abused its discretion, since the mother received the same number of shares of stock in the corporation as did the father. Also, we cannot say that the "gift" of stock to the father by his parents was "used regularly for the common benefit of the parties during their marriage," id., since testimony revealed that the father began receiving stock proceeds only three months prior to the time of *Page 609 
the parties' separation and the mother's filing for divorce.
In the same context, the mother alluded to a $35,000 inheritance which the father expected to receive from a relative. However, it was undisputed that the inheritance had not been received at the time of trial and, therefore, consideration of that inheritance fell outside the parameters of Ala. Code 1975, § 30-2-51. Accordingly, we reverse and remand as to the issue of alimony, but affirm as to the division of marital assets.
Next, the mother contends that the trial court erred by deviating from the child support guidelines of Rule 32, Alabama Rules of Judicial Administration, in setting child support for Benjamin at $300 per month. The use of Rule 32, A.R.J.A., in determining child support establishes a rebuttable presumption that the amount awarded is correct when based upon such guidelines. The trial court may deviate from the guidelines, however, if it makes a written finding on the record that application of the guidelines would be unjust or inappropriate based on (i) an agreement of the parties or (ii) the trial court's own finding that such application would be manifestly unjust or inequitable. Rule 32, A.R.J.A.
The record contained three different guideline forms submitted by the parties. The child support amounts indicated on the two forms submitted by the father showed his monthly responsibility to be $128.60, and $308. Each of these two figures resulted from the father attempting to impute to the mother the $289 in Social Security benefits received by Benjamin. The one form submitted by the mother showed the father's monthly responsibility to be $313.60, without considering the $289 in Social Security benefits payable to Benjamin.
Since the trial court's order establishing child support of $300 made no mention of the application of the child support guidelines, nor of reasons for deviation from such guidelines, we reverse and remand as to this issue for the trial court to comply with Rule 32, A.R.J.A. It is noteworthy that, in his brief on appeal, the father stated that he would "gladly pay an additional $13.60 per month to support his son if ratified by this Court." Concerning the $289 in Social Security benefits received by Benjamin, our review of Rule 32 discloses no mention or treatment of such an amount received by someoneother than a parent. See Rule 32(B)(1), A.R.J.A. (stating that " 'income' means actual gross income of a parent"). (Emphasis added.)
Finally, the mother argues that the trial court erred by not ordering the father to pay post-minority support for Benjamin's college expenses. In Ex parte Bayliss, 550 So.2d 986
(Ala. 1989), our supreme court stated the following:
 "In a proceeding for dissolution of marriage . . ., a trial court may award sums of money out of the property and income of either or both parents for the post-minority education of a child of that dissolved marriage, when application is made therefor, . . . before the child attains the age of majority. In doing so, the trial court shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education."
Id. at 987. (Emphasis in original.)
The following exchange between the mother's attorney and the father is the extent of the trial testimony concerning Benjamin's possible future college prospects:
 "Q. [You have] one son named Benjamin, who is how old?
"A. Sixteen.
"Q. What kind of student is Benjamin?
"A. Above average.
 "Q. Is there any reason that you can think of that had you and [the mother] remained married, Benjamin would not go to college?
"A. I sure hope he goes to college.
 "Q. In other words, the boy is college material, in your opinion?
"A. That's correct."
Such testimony is much too sparse to satisfy the considerations mandated in Bayliss. Accordingly, we hold that the trial court, at *Page 610 
this time, did not err in refusing to award post-minority college support to Benjamin.
Based on the foregoing, the judgment is due to be affirmed in part, reversed in part, and the case remanded with instructions. The mother's request for an attorney's fee on appeal is granted in the amount of $500.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
THIGPEN, J., concurs.
ROBERTSON, P.J., concurs in result only.